## GIBBES v. TOWN COUNCIL OF BEAUFORT.

1. In action by the owners of a chartered ferry against defendant for damages for establishing another ferry, there being some evidence that the second ferry was within one mile of the first, the trial judge did not err in refusing a motion for non-suit based upon the want of proof of location.
2. Where an act covers only part of a general subject and gives additional remedies by way of penalties in a particular case for the enforcement of an old common law right, such additional remedy is not exclusive, but the common law remedy still exists.
3. *Quœre.* Where the legislature grants to a municipal corporation the usual powers and duties to make provision for the convenience and prosperity of its citizens, does a charter of a ferry granted to private individuals deprive such corporation of the right to establish a free ferry within a mile of the other, and how should the question be raised?
4. A municipal corporation is not liable to ·be sued in an action of tort for non-feasance or misfeasance of its officers, as *e. g.* for establishing a ferry to the injury of one already existing, unless expressly made so liable by statute.

Before ALDRICH, J., Beaufort, October, 1882.

This was an appeal from an order refusing a motion for non-suit.    The opinion states the case.

*Mr. W. J. Verdier,* for appellant.

*Mr. W. J. Whipper,* contra.

November 22d, 1883.    The opinion of the court was delivered by.

MR. JUSTICE McGOWAN.    In December, 1873, the legislature rechartered the ferry over Beaufort river known as "White

Hall ferry, leading from the town of Beaufort to Ladies island," and vested the same in Peter Gibbes and Peter Massay. The charter prescribes certain rates of toll, but there is nothing in it which indicates that the franchise was exclusive. 15 *Stat.* 523.

It seems that the ferry is within the corporate limits of the town of Beaufort, and in February, 1880, nearly a year before the expiration of the said charter, the town council of Beaufort, considering that " White Hall ferry is within the corporate limits of the town, and, therefore, a public highway of great importance to the business and property of the town and entitled to receive the same attention and expenditures as other highways created for the benefit of the public, and of right ought to be free for use and convenience without toll," &c., laid a tax for supporting a free crossing called " a free ferry " at that point, and established the same, limiting it, however, to passengers. The plaintiffs, considering this a violation of their chartered right, sued the town council for damages, in the nature of an action on the case for nuisance. The answer was a general denial of the plaintiffs' right to recover.

The case came on to be heard before Judge Aldrich, who refused a motion for a non-suit, and the case being submitted to the jury, they found for the plaintiffs $272.50 damages. The town of Beaufort appeals to this court upon the following exceptions : " 1. That the ferry established by the defendant being shown by the plaintiffs to have been a free ferry, it was not in violation of, or an infringement upon, the chartered rights of the plaintiffs. 2. That there being no evidence to show that the ferry established by the defendant was within one mile of the plaintiffs' ferry, the defendant's ferry was not an interference with the plaintiffs' chartered rights. 3. That the statute having prescribed a mode of redressing violations of plaintiffs' chartered rights, and having furnished a remedy, the plaintiffs were limited to that remedy and could not proceed otherwise. 4. That defendant being a municipal corporation, in the absence of a statute giving the action, the plaintiffs could not maintain their action of trespass against them.

The State, in the exercise of the right of eminent domain,

granted to the plaintiffs the franchise of White Hall ferry for seven years. That became a vested right—property. The utility of such a franchise lies in its exclusiveness, at least as against all unauthorized crossings within certain limits. The moment the right becomes common to all, the franchise substantially ceases to exist. *Conway* v. *Taylor's Executor*, 1 *Black* 623. The question then arises, whether it was error of law on the part of the Circuit judge to refuse the motion for a non-suit; and upon that question the defendant makes the following points:

First. That the evidence was not sufficient to show that the passage, or free ferry across Beaufort river established by the defendants and complained of by the plaintiffs, was within the space of one mile from the White Hall ferry. Section 1124 of the general statutes is in these words: "If any person or persons, living within the space of one mile of any established ferry in any part of this State, shall, for any fee, toll or reward whatsoever, transport any person, goods or cattle from one side only to the other of that river, where any established ferry shall be kept, the person taking any such fee, toll or reward shall forfeit and pay to the proprietor of the ferry next adjacent to the place where such fare was taken up, treble the value of the fee, toll or reward given, paid or promised, to be recovered by warrant, under the hand and seal of one trial justice, or be imprisoned in the county jail for a period not exceeding thirty days, any law, usage or custom to the contrary notwithstanding, provided," &c.

The terms of this act would seem to indicate that the inhibition as to a mile, relates to the residence, and not to the act of the offending party; but it is a principle of the common law, that "if a ferry is erected on a river, so near another ferry as to draw away its custom, it is a nuisance to the owner of the old one." 3 *Bl. Com.* 310. The rule as to the sufficiency of evidence is, that if there is any evidence of a fact, the case must go to the jury, whose province alone it is to judge of its sufficiency. It is true that the evidence as to the *locus* of the free ferry, was not as clear as it might have been, especially as that allegation was the very foundation of the plaintiffs' claim. But we think there was some evidence in the town council records, which were

in proof that the free crossing was established at or near the White Hall ferry " connecting the town of Beaufort with Ladies island." The report of the finance committee, upon which the crossing was established, so states in terms. Upon this point there was no error.

Second. The appellant further urges, that the non-suit should have been granted, on the ground that this action was not a proceeding for the penalties allowed by the statute above cited; that said statute declares the law and furnishes the remedy, and as this remedy in its nature superseded all others, the plaintiffs were bound to pursue it, and not having done so, should have been non-suited. It is true that this court has held, in reference to the agricultural lien act, that being a new law, the courts can not, for its violation, go beyond the remedy afforded by it or enforce any other. *Kennedy* v. *Reames*, 15 *S. C.* 548. But we do not understand that this principle applies to an act which only covers part of a general subject, and only purports to give additional remedies by way of penalties in a particular case, for the enforcement of an old common law right. Our present law giving a penalty for exacting tolls, cited above, is very nearly identical with the old act of 1741, which, as the preamble shows, was intended not to repeal the old remedy by action, but to give an additional remedy in a particular state of facts mentioned. See 9 *Stat.*, § 9, *p.* 123.

This view is confirmed by the practice of the courts. This act was in force in 1818, when the case of *McGowen* v. *Stark*, was decided. That was not a proceeding for the penalties allowed by the act, but an action on the case for damages, brought by a grantee of the franchise of a ferry against the proprietor of another ferry set up without authority. No question was made as to the legality of the action, although the case was stoutly contested. The plaintiff recovered large damages, the court holding that " the owner of a ferry established by the legislature, is protected in his right by the common law; and, therefore, if another set up a ferry without public authority near to his ferry, he may maintain an action on the case for a nuisance against him." 1 *Nott & M.* 387, and note. We do not think

that the act excluded the plaintiffs from all remedy except that afforded by it.

Third. But the defendant corporation makes still another objection : that, not being authorized by statute, the action on the case for damages as for a nuisance cannot be maintained against the town of Beaufort for the act of its officers in opening a free passage across the river within its corporate limits. It seems to us that there is force in this point. The peculiarity of the case arises from the fact that the legislature granted to individuals the franchise of a ferry, within the limits of a town, to which, in the act of incorporation, it had already given the usual municipal powers and duties, to make provision for the convenience and prosperity of its citizens. The policy of the law in granting the franchise of a ferry, is not so much to secure the tolls allowed to the grantees, as to facilitate commerce, and to provide certain and safe transit for the public; to promote and not to obstruct the general convenience; and it can hardly be supposed that the legislature intended, in chartering this ferry, to repeal by implication the municipal powers it had already given in the act of incorporation, and as to which the incorporation was merely the agent of the legislature in governing that locality.

The State, in the charter of the ferry, did not expressly grant any exclusive privilege, and if the plaintiffs are entitled to them, it must be implied simply from the nature of the grant, and cannot be inferred from the words by which the grant was made. Whilst, as we have seen, under the general law, individuals may thereby be restrained from drawing off the tolls by another unauthorized ferry within the disfranchised limits; yet it does not follow that the mere grant of the charter amounted to such a contract with the grantees, as to prevent the State itself from granting another one to the injury of the first. See the case of *Charles River Bridge* v. *Warren Bridge,* 11 *Pet.* 536; *The Turnpike Company* v. *The State,* 3 *Wall.* 211. The principle announced by these cases seems to have been adopted into the statute law of the State of force at the time this charter was granted. It was provided that "no grant of a bridge, ferry or turnpike road, shall prevent the legislature from making further

grants of ferries, bridges or turnpike roads, within any distance of the same, whenever the convenience of the community may require such further grants. But every grant of a ferry, bridge or turnpike road shall exclude all other persons from erecting and keeping up any bridge, ferry or road which may reduce the profits of such chartered bridge, ferry or turnpike road, except for the individual use of the person erecting and keeping up such unchartered bridge, ferry or road, without the authority of the legislature expressed by the act." See *Gen. Stat.*, 1872, *ch. LXIII.*, § 74.

If the State itself could have established this free ferry, without impairing the obligation of any contract with the grantees, could not the municipal corporation of the town of Beaufort, as governmental agent of the State, within its limits, do the same? It has been held that, what the State constitutionally empowers a municipal corporation to do, may be considered as done by the State. Do the words in the act above cited, "authority of the legislature expressed by act," embrace the "authority" given to the town of Beaufort "expressed" in the act of incorporation? As far as we know this is a new question, and it seems to us that the proper way to have had it decided would have been by proceedings on the part of the grantees of the ferry charter for an injunction against the corporate authorities, praying that they might be enjoined from operating the free ferry established by them. *Turnpike Company* v. *The State*, 3 *Wall. supra.*

But be that as it may, without ruling anything upon that subject, it is clear that this action for damages can not be maintained against the town of Beaufort. We regard it settled in this State, that a municipal corporation, instituted for the purpose of assisting the State in the conduct of local civil government, is not liable to be sued in an action of tort for non-feasance or misfeasance of its officers in regard to their public duties, unless expressly made so liable by statute. *White* v. *City Council of Charleston*, 2 *Hill* 572; *Coleman* v. *Chester*, 14 *S. C.* 290; *Black* v. *City of Columbia*, 19 *Id.* 412; *Young* v. *City Council of Charleston*, ante p. 116.

The judgment of this court is that the judgment of the Circuit court be reversed, and the complaint be dismissed.