6384

HOPKINS v. CLEMSON AGRICULTURAL COLLEGE.

1. SUIT AGAINST STATE—PARTIES.—An action against Clemson Agricultural College for damages to land caused by changing the current of a river in times of flood by erection of a dike and for the removal of the dike and maintaining the original status, is an action against the State in tort, the State is a necessary party to the equity cause of action, and the suit cannot be maintained without the consent of the State.
2. REHEARING refused.

Before ALDRICH, J., Oconee, April, 1906. Affirmed.

Action by John Hopkins against Clemson Agricultural College of South Carolina. From judgment for defendant, plaintiff appeals on the following exceptions:

"I. Because his Honor erred in finding and holding that the corporation created under the name of 'The Clemson Agricultural College of South Carolina' is an agent of the State, and, as such, it cannot be sued; whereas, he should have found and held that defendant is a body politic and corporate, and capable of suing and being sued.

"II. Because his Honor erred in finding and holding that the legislature of the State, in creating the defendant corporation with the usual powers and liabilities

of a corporation, has not thereby given consent for said corporation to be sued.

"III. Because his Honor erred in finding and holding that under the charter the trustees could sue and be sued only so far, and no farther, than was necessary to carry out the powers conferred upon the board, and upon such contracts and obligations as they might make in pursuance of such power, and such permission does not warrant a suit of this nature.

"IV. Because his Honor erred in finding and holding as follows: 'This being an action for a tort, against the State, to recover eight thousand dollars, cannot be maintained;' whereas, he should have found and held that this is an action against an artificial person, known and designated by the corporate name of 'The Clemson Agricultural College of South Carolina,' and capable of suing and being sued, in like manner as a natural person, for its unlawful act, either in its own right, or as agent of the State.

"V. Because his Honor erred in finding and holding that the property of the corporation is held by the board of trustees, as the agent of the State, and that said property is the property of the State; whereas, he should have found and held that said property is not the property of the State in its own right to be used for any political or governmental purpose; but the same is held, used and managed by the board of trustees for corporate purposes, to wit: The founding and maintaining an institution of learning for which said donations and appropriations were made.

"VI. Because, under the terms of the devise and bequest of Thomas G. Clemson and the act of the General Assembly accepting said donation, and incorporating the college, a contract was entered into by and between testator and the State of South Carolina, whereby the entire corpus of the donation became a fund for the perpetual endowment of the institution, a private eleemosynary corporation was created, the contract became irrevocable, the trustees exercise a special authority created by the will of

testator and confirmed by the act of incorporation, and his Honor erred in not so holding.

"VII. Because the use, income, rents and profits of the Fort Hill lands are enjoyed by the corporation, without accounting therefor, and while the technical title may be in the State, which is a mere trustee, the defendant is the *cestui que trust,* the equitable owner thereof, and uses the rents, income and profits of said lands as its property, and his Honor erred in not so holding.

"VIII. Because the corporation, known and designated as 'The Clemson Agricultural College of South Carolina,' has no political or governmental powers, and cannot in a legal sense be considered an agent or officer of the State, and his Honor erred in not so finding and holding.

"IX. Because the lands devised by testator, having been devoted by the terms of the devise to educational purposes; by the terms of the devise are held in trust for the use of the institution forever; the same is not property of the State; the legislature cannot recall or revoke the devise or make any different disposition of the lands, nor sell the property and turn the funds into the State Treasury as the money or property of the State, and his Honor erred in not so holding.

"X. Because the 288 acres adjoining the Fort Hill place, conveyed by Floride Isabella Lee on May 25, 1894, to 'The Clemson Agricultural College of South Carolina,' is owned in fee and possessed by said corporation, and his Honor erred in not so finding and holding.

"XI. Because the tract of 14 acres conveyed to 'The Clemson Agricultural College of South Carolina' by Anna P. Lewis on the 30th day of June, 1903, is owned in fee and possessed by the said corporation, and his Honor erred in not so finding and holding.

"XII. Because the said corporation may purchase and hold property and may take any property or money given or conveyed by deed, devise or bequest and hold the same

for the use and benefit of said college, and his Honor erred in not so finding and holding.

"XIII. Because the rents, issues and profits of all lands donated to or purchased for the benefit of said college are used by the corporation as corporate property, without accounting therefor, and his Honor erred in not so finding and holding.

"XIV. Because the will of testator and the charter by the State embody the terms of a binding contract between the parties, and the donations made by the testator as well as the appropriations made from time to time by the State, or federal governments, and expended in permanent improvements upon the real estate for the use of said college, are protected from any transfer, sale or disposition thereof by the State, in the slightest degree, contrary to or violative of the terms of the contract, or trust, and his Honor erred in not so finding and holding.

"XV. Because the ordinary powers of a corporation are as follows: (1) Perpetual succession; (2) To sue and be sued, and to receive and grant, by their corporate name; (3) To purchase and hold lands and chattels; (4) To have a common seal; (5) To make by-laws. While these powers are generally expressly given by statute, still they are the usual inherent incidents of a corporation, and his Honor erred in not so holding.

"XVI. Because the creation by the legislature of a body corporate impliedly confers upon it the power to sue and be sued so far as may be necessary to maintain its legal rights and to enforce its legal duties, or liabilities. In general it may be said that the power to sue and be sued is, by the principles of the common law, an incident of every corporation, and his Honor erred in not so holding.

"XVII. Because the ordinary legal remedies applicable in the case of natural persons are equally applicable in case of corporations, and his Honor erred in not so holding.

"XVIII. Although an action cannot be brought against a sovereign State without its consent, yet if it chooses so

far to cast off its sovereignty as to become a corporator, in that character it may be sued, and his Honor erred in not so holding.

"XIX. Where the law imposes an obligation upon a corporation, as well as upon a natural person, which it fails or refuses to recognize or discharge, it may be held civilly liable therefor, at law or in equity, in any appropriate form of action, and his Honor erred in not so holding.

"XX. A corporation can commit trespass upon either person or property, through its agents acting in its behalf, and it follows that an action will lie for such injury with the like remedies as in this case of a natural person, and his Honor erred in not so holding.

"XXI. Corporations may be held liable, in appropriate states of facts, for torts, commended or authorized by them, and his Honor erred in not so holding.

"XXII. Because the dike in question was erected and has been and is being maintained by the defendant corporation by and through the board of trustees acting in its behalf, and his Honor erred in not so finding and holding.

"XXIII. When the State becomes a corporator it is regarded as an individual, in relation to the corporation. What an individual corporator may do, the State, as a corporator, may do, and no more, and his Honor erred in not so holding.

"XXIV. A private eleemosynary corporation can enjoy no privilege, immunity or exemption by reason of its connection with the State, other than a corporation composed of private citizens, and his Honor erred in not so holding.

"XXV. The State, in its sovereign capacity, is distinct and separate from a corporation. When it establishes a corporation, with the usual corporate powers, for any purpose, be it educational, benevolent, charitable, industrial, financial or governmental, it does not invest the corporation with any of its sovereign power or immunity, and his Honor erred in not so holding.

"XXVI. Because the various acts of the General Assembly conferring corporate powers upon 'The Clemson Agri-

cultural College of South Carolina,' create three different types of corporations, to wit: (a) a private eleemosynary corporation for educational purposes, by act approved November 27, 1889; (b) a municipal corporation, by act approved December 24, 1894; (c) a railroad corporation, subject to all liabilities of railroad corporations, by act approved February 19, 1900; and his Honor erred in not so finding and holding.

"XXVII. Because the several acts of the legislature conferring corporate powers upon 'The Clemson Agriculutral College of South Carolina' clothe said corporation with the usual powers, responsibilities and liabilities incident to such corporations, and in the face of these statutes it was error for his Honor to hold as follows: 'The "sue and be sued" provision in the charter of defendant relates to such powers as were conferred upon the trustees by the act, and the legislature did not throw the State open to any and all kinds of suits. Under the charter the trustees could sue and be sued only so far and no farther, than was necessary to carry out the powers conferred upon the board, and upon such contracts and obligations as they might make in pursuance of such power.'

"XXVIII. Because the defendant corporation, acting by and through its board of trustees, erected and maintained the dike in question, and if injury and damage ensue therefrom to the lands of plaintiff, an action therefor will lie against the corporation in like manner as against a natural person, and his Honor erred in not so finding and holding.

"XXIX. Because the injurious acts alleged in the complaint are the acts of the defendant corporation, acting by and through the board of trustees as its agent, and not by the trustees individually, singly or collectively; and, when action is brought against the corporation for such injury and damage, it is incumbent upon the corporation to defend and justify such act, if it can, in like manner as a natural person must do; and, unless a natural person acting as the defendant corporation is alleged to have acted, could defend

2—77

and justify by invoking some constitutional right or statute, the issue joined must be heard and determined by the Court, and his Honor erred in not so finding and holding.

"XXX. A defendant, whether natural or corporate, sued as a wrong-doer, who seeks to substitute the State in his or its place, or to justify by the authority of the State, or to defend on the ground that the State has adopted his or its act and exonerated him or it, cannot rest on the bare assertion of such defense. It is necessary for such a defendant, in order to complete his defense, to produce a valid law of the State as a warrant of his or its act, and his Honor erred in not so holding.

"XXXI. Because article III, section 17, of the State Constitution of 1895, provides: 'Every act or resolution having the force of law shall relate to but one subject, and that shall be expressed in the title;' the joint resolution approved January 14, 1894, which it is claimed authorizes the diking of Seneca River is entitled as follows: 'A joint resolution to authorize and require the directors of the penitentiary to furnish to the trustees of The Clemson Agricultural College fifty convicts, and to furnish to the regents of the lunatic asylum fifty convicts, and to furnish to the trustees of the South Carolina Industrial and Winthrop Normal College one hundred convicts;' and so much of said joint resolution as relates to the diking of Seneca River by said trustees with the work of said convicts violates this provision, and is unconstitutional, null and void; it cannot be invoked as a legislative act, or declaration, authorizing or directing the diking of Seneca River by the said board of trustees, whether acting as agents of the State, or as agents of the corporation, and his Honor erred in not so finding and holding.

"XXXII. Because article I, section 5, of the State Constitution of 1895, guarantees that no person shall be deprived of his property without due process of law. A person may be deprived of his property without any physical taking thereof, and this provision of the Constitution is violated by

any act which destroys the value of property, takes away any of its essential attributes, or deprives the owner of the lawful use of it; and, a properly entitled act or resolution of the General Assembly, authorizing or directing a course of action, which results in any such depriving of the owner of his property, would be unconstitutional, null and void, and could furnish no defense in law or equity; and his Honor erred in not so holding.

"XXXIII. Because the fourteenth amendment to the Constitution of the United States provides: 'Nor shall any State deprive any person of life, liberty or property without due process of law.' The allegations of the complaint show that plaintiff has been deprived of his property for all practical purposes as agricultural lands as effectually as if there had been a physical taking thereof; that plaintiff has thus been deprived of his property by the defendant corporation, acting by and through its board of trustees, and this constitutional guarantee has been violated by such action, whether taken pursuant to an act of the legislature or otherwise, and his Honor erred in not so holding.

"XXXIV. Because the objection that this is an action against the State is inconsistent with the principle involved in article 5 of the amendments to the Constitution of the United States, providing, 'That no person * * shall be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation,' and his Honor erred in not so holding.

"XXXV. The State itself is an ideal person, intangible, invisible, immutable. The government is an agent, and, within the sphere of the agency, a perfect representative; but outside of that, it is a lawless usurpation. Whatever wrong may be attempted in the name of the State is imputable to its agency, the government, and not the State; for, as it can speak and act only by law, whatever it does say or do must be lawful. That which, therefore, is unlawful, because made so by the supreme law, the Constitution of the United States,

is not a word or deed of the State, but is the mere wrong and trespass of those persons, whether natural or artificial, who falsely speak and act in its name. The principles of individual liberty and right of property cannot be maintained if, when violated, the judicial tribunals are forbidden jurisdiction in actions brought against the offenders, whether natural or artificial, who are the instruments of wrong, because they interpose the shield of the State, and his Honor erred in not so holding.

"XXXVI. The objection is that, as the State cannot be brought before the Court, this suit cannot be sustained against the defendant corporation, the alleged agent of the State; whereas, even if the defendant corporation be the agent of the State, and the State be exempt from judicial process, it would still be subversive of the best established principles to say that the law cannot afford the same remedies against the agent employed in doing the wrong, which it would afford against him could his principal be joined in the suit; and his Honor erred in not so holding.

"XXXVII. An action against a corporation cannot be regarded or treated as an action against the corporator or party owning its stock or property. When an artificial person, called a corporation, is brought into existence, it, like all other persons, natural as well as artificial, may be subjected to the process of the Courts, and the fact that its property is owned in part or in whole by the State, confers upon it no exemption from suit, as the corporation and the person or persons, whether natural or artificial, who compose it, are totally distinct and different; and his Honor erred in not so holding.

"XXXVIII. Because the moneys appropriated from time to time by the General Assembly are for the use of the corpoation and devoted as a trust or corporate fund to the carrying out of its business as an educational institution under the direction and control of the board of trustees, as a corporate body; and for any act of said board in the performance of its duty resulting in unlawful injury to the rights

of person or property of another, such fund would be answerable to and could be reached by the ordinary process of the Courts in actions brought for redress of such wrongs, and his Honor erred in not so holding.

"XXXIX. It does not follow, that, because the State makes annual appropriations to assist the defendant corporation in maintaining an institution of learning in accordance with the will of Thomas G. Clemson, and to make certain that its bounty shall not be misapplied, requires annual reports to the General Assembly by the board of trustees, showing receipts and disbursements, said corporation is exempt from suit, and his Honor erred in not so holding.

"XL. To grant the relief prayed for in the complaint would not have the effect of clogging the wheels of one of the branches of the State government, nor interfere with the State in the discharge of any of its political or governmental functions. The State is not an indispensable party to the issue raised; in no way can it be affected by the determination of either the legal or equitable cause of action set out in the complaint, and his Honor erred in not so holding.

"XLI. Because his Honor erred in finding and holding as follows: 'There can be no complete determination of the controversy at bar without the presence of the State; because a complete determination, should the plaintiff prevail, would result in an injunction against the use of the dike, and its removal, and a restoration of former conditions;' whereas, he should have found and held that there can be a complete determination of the controversy without the presence of the State; that such order of injunction, if issued, would require the corporation acting by and through its board of trustees, who erected the dike, to remove the same and restore the condition as they found it prevailing at the time of their unlawful act of constructing the same.

"XLII. Because his Honor erred in finding and holding that said dike is the property of the State; whereas, he should have found and held that the dike is the property of defendant corporation.

"XLIII. Because it was error for his Honor to find and hold as follows: 'It is also evident, that all property held by the board of trustees, as the agent of the State, is the property of the State;' whereas, he should have found and held that the property held by said board of trustees, except such personal property as has been purchased by them with moneys appropriated by the State, is the property of the defendant corporation; that the State is a mere trustee, holding said property for the use of the corporation.

"XLIV. Because it was error for his Honor to find and hold that the property of the State must respond to any judgment for damages which could be given in this action; because the board has no other property out of which the judgment might be satisfied; whereas, he should have found and held that there is property of the corporation far in excess of the amount of any judgment for damages which could be rendered in this action.

"XLV. Because it was error for his Honor to find and hold that the State in its sovereignty has not consented to be a party to this suit; whereas, he should have found and held that the State, by creating said corporation and clothing it with the usual corporate powers, and liabilities, and expressly declaring that it may sue and be sued, has thereby granted and given all necessary and requisite consent that suit may be brought, without a grant of further consent.

"XLVI. Because a suit against an officer or agent of a State to enjoin the enforcing of an unconstitutional statute whereby the plaintiff's property will be injured, or to recover damages for taking under a void statute the property of the citizen, is not an action against the State, and his Honor erred in not so holding.

"XLVII. Because, if a State by its officers or agents should seize for public use, or for the use of the State, the property of a citizen, without making or securing just compensation to him, and thus violate the constitutional provision declaring that no State shall deprive any person of property without due process of law, the citizen would be

remediless so long as the State, by its agents, chooses to hold his property, and his Honor erred in not so holding.

"XLVIII. While it is true that even in·case of seizure, injury or damage to the property of the citizen by an officer or agent of the State, the citizen may, if he choose, rely upon the good faith of the State in ·the matter of compensation; still he is not compelled to part with his property, even for the use or benefit of the State, or sustain injury thereto, except upon the terms prescribed by the supreme law of the land, namely, upon just compensation made or secured, and his Honor erred in not so holding.

"XLIX. An action, whether brought to recover money or property in the hands of an officer or agent of a State, unlawfully taken by him in behalf of the State, or for compensation in damages, or, in a proper case where the remedy at law is inadequate, for an injunction to prevent such wrong or injury, is not, within the meaning of the Constitution, an action against the State, and his Honor erred in not so holding.

"L. That article I, section 17, of the State Constitution of 1895, provides: 'Private property shall not be taken for private use without consent of the owner, nor for public use without just compensation being made therefor;' that this provision of the Constitution has been violated by the act of the defendant corporation without consent of plaintiff and without just compensation having been made to plaintiff by defendant, and his Honor erred in not so holding.

"LI. Because, even if the defendant corporation be considered in a legal sense an agency of the State, still the action of defendant in erecting and maintaining the dike has thereby created a continuing nuisance, resulting in injury and damage to lands of plaintiff, for which an action will lie against defendant for such unlawful and injurious act, even though action will not lie against the State for the unlawful act of the agent, and his Honor erred in not so holding.

"LII. Because the State will not suffer one of its citizens
to be injured in his property, or deprived thereof, by an
unlawful act of an agent, who in such transaction becomes
a false representative of the principal, and, therefore, while
the State cannot be sued, still it cannot countenance wrong,
and, for this reason, the citizen is permitted to sue the agent
of the State for the commission of an unlawful, or unconsti-
tutional act, resulting in damage and injury to property, or
the depriving thereof, and his Honor erred in not so holding.

"LIII. Because his Honor confused the right of action
against defendant with the remedy, or the want of a remedy,
for the enforcement of a judgment for damages, should
plaintiff succeed in recovery of such judgment; whereas, it
matters not whether the defendant corporation has or has
not any property out of which a money judgment might be
enforced by levy and sale under execution, the question as to
the enforcement of a judgment being no part of plaintiff's
cause of action, and his Honor erred in not so holding.

"LIV. Because the allegations of the complaint show the
creation of a nuisance by the defendant corporation, whether
acting for itself in its own right, or as an agent of the State,
and that said nuisance has been and remains a continuous
one, resulting in continuous and increasing damage and in-
jury to the property of plaintiff, a proper case is hereby
shown for the invoking of equitable relief by the removal
of said dike, and preventing the continuance of said nuis-
ance by the abatement thereof, and his Honor erred in not
so holding.

"LV. Because, even if the State be the owner in fee and
in possession of all the property, real and personal, devised
and bequeathed by Thomas G. Clemson, still said property
cannot be used by any officer, agent, or agency of the State,
in such a manner as to inflict damage and injury upon the
property of a citizen, whereby the value of such property is
depreciated, the use thereof impaired, or the owner deprived
of his property without just compensation; and in such case
action will lie against the officer, agent, or corporate agency
of the State through whose act the damage and injury be in-

flicted, for redress of such wrong, and his Honor erred in not so holding.

"LVI. If officers or agents of the State invade the private right of property in a mode not authorized by statute, or if such statute be invalid, the person injured has a preventive remedy by injunction, although the State may be affected thereby, yet not a party of the action, and his Honor erred in not so holding."

*Mr. R. T. Jaynes* for appellant cites: *Kind of corporation created:* Thomp. on Cor., secs. 1, 11; 22 Wend., 71; 1 Kyd. on Cor., 70; 2 McL., 195; 2 Kent Com., 275, 276; 111 Ind., 336; 9 G. & J., 365; 31 Amer. Dec., 72; 122 Ill., 339. *Suits by and against corporations:* Thomp. on Corp., secs. 7360, 7361, 7367, 7371, 7391, 7394, 6303, 6312, 6313, 6315, 6316; 3 S. C., 139; 1 S. C., 76; 128 N. C., 12; 152 Mass., 28; 93 Cal., 321; 44 Am. St. R., 243; 50 L. R. A., 564; 23 L. R. A., 200; 75 N. Y., 441; 66 Am. St. R., 33; 63 Md., 20; 45 Md., 330; 56 Mass., 521; 4 Gray, 465; 85 Mass., 422; 2 Cranch, 127; 3 Wall., 669; 29 L. R. A., 708; 12 R. I., 411; 34 Am. R., 675; 120 Mass., 433. *Suits against State agents:* 106 U. S., 196; 103 U. S., 168; 167 U. S., 203; 149 U. S., 164; 165 U. S., 58; 161 U. S., 12; 97 Ky., 458; 95 Ky., 251; 9 Wheat., 738; 108 Ky., 357; 25 S. C., 416; 106 U. S., 196; 114 U. S., 270; 43 S. C., 155. *Constitutional guarantees:* 114 U. S., 270; 10 Ency., 299; 98 N. Y., 98; 41 S. W. R., 1094; 53 S. C., 281; 1 Bay, 384; 1 Brev., 471; 1 McM., 502; 2 Speer, 644; 5 Rich., 175; 2 Bail., 677; 10 Rich., 440; 60 S. C., 475. *Appropriate remedy:* 9 Wheat., 738; 11 Pet., 572; 106 U. S., 212; 140 U. S., 10; 77 Va., 337; 88 Va., 469; 1 S. E., 740; 9 Wheat., 904; 44 S. C., 256; 169 U. S., 466; 2 Pet., 263; 2 Fed. Cas., 786; 26 Wend., 221; 9 Or., 363; 154 U. S., 389; 165 U. S., 112; 149 U. S., 164.

*Messrs. Simpson & Hood, Bellinger & Welch* and *James P. Carey,* contra. *Mr. Carey* cites: *When a suit not in form but in effect is a suit against the State:* 25 S. C., 416; 43 S. C., 154; 60 S. C., 474. *Clemson College is a governmental*

*agency of the State:* 95 Ky., 251; 144 Mass., 203; 63 Md., 20; 75 Md., 441. *State has not consented to be sued by giving authority to the Clemson corporation to sue and be sued:* 26 Ency., 487; 161 U. S., 10; 66 Am. St. R., 33.

*Messrs. Bellinger & Welch* cite: *The college is a public corporation,* 29 L. R. A., 378, *and as such is not liable in tort:* Note to 29 L. R. A., 378; 23 L. R. A., 300; 94 Md., 334; 40 L. R. A., 677; 20 Ency., 1145; 128 N. C., 12; 25 S. C., 416; 1009 U. S., 446. *State is a necessary party to the equity cause of action:* 43 S. C., 155; 117 U. S., 71; Code of Proc., 143.

The opinion in this case was filed November 20, 1906, but remittitur held up on petition for rehearing until

January 27, 1907. The opinion of the Court was delivered by

Mr. Chief Justice Pope. This action was begun on the first day of September, 1905. Its object was to recover by the plaintiff of the defendant the sum of eight thousand dollars on account of the tort of the defendant by a dike erected by the defendant on the east side of the Seneca River, which it was alleged had caused the waters of said Seneca River to overflow forty-three acres of bottom lands owned by the plaintiff, so that said lands were so injured and damaged by the said dike on defendant's land on the west side of Seneca River that plaintiff's bottom land became practically ruined and useless, to the damage of plaintiff in the sum of eight thousand dollars. Also that the plaintiff seeks an injunction against the defendant whereby said dike should be removed.

The defendant by its answer denied all the allegations of the plaintiff's complaint, but insisted that the land upon which the dike was erected was and is still held by the State of South Carolina as the owner in fee simple thereof, and the same is now and has been since 1890 in the possession of said State of South Carolina, and that the defendant, the Clemson Agricultural College of South Carolina, has

had and still has the management of the said property belonging to the said State of South Carolina, but the defendant has no title or interest in said land. And that the dike in question in 1894 was built by the State of South Carolina upon its own property, and that the defendant simply acted as the agent of said State in the erection and maintenance of said dike, which was fully authorized by the State.

When this action was called for trial, a consent in writing signed by the attorneys on each side was made, by which it was agreed that the jurisdictional issue raised by the defendant should be first determined, and that either party may offer such testimony on this issue as he may desire. Judge James Aldrich heard the issue thus presented, and after argument rendered the following decree, dated 25th April, 1906:

"Plaintiff in his complaint alleges that he is the owner in fee and in possession of a very valuable tract of bottom land on the west side of Seneca River, in the County of Oconee; that about the years 1894-1895, the defendant, by its board of trustees, constructed on its land lying on the east side of Seneca River, and opposite the bottom lands of plaintiff, a high and strong embankment or dike, for the purpose of preventing the overflow of the waters of Seneca River on its bottom lands in times of freshet or floods; that said embankment prevents entirely the accustomed overflow of said water upon the bottom lands of defendant, and in times of freshet the entire volume of said water is thrown upon, and forced to flow with great volume and momentum upon plaintiff's bottom land aforesaid, whereby plaintiff's natural bank on plaintiff's side, and the rich soil of his bottom lands were washed away; that said bottom lands of plaintiff have been practically ruined and rendered sterile, to plaintiff's damage in the sum of eight thousand dollars.

"Wherefore, plaintiff asks judgment against defendant (1) for $8,000 and costs, (2) that defendant be enjoined by the proper order of this Court to abate and remove said dike, and restore the condition prevailing and existing prior

to the construction of said dike; (3) and for such other and further relief as to the Court may seem proper.

"The defendant answered the complaint, alleging that the farm and land on the east side of Seneca River, described in the complaint, was the property of the State of South Carolina; that all acts done with reference to the erecting and maintaining said dike were done by said State through its agents and employees, duly authorized by the State, and that the Court has no jurisdiction in this action.

"Counsel for plaintiff and defendant entered into a written agreement, by the terms of which it is provided that the jurisdictional issues raised by the defendant shall be first determined, and then the other issues in the case shall be tried, unless those issues are finally disposed of herein.

"At the winter term of this Court the case came up for trial under said agreement, and both sides offered testimony relating to the jurisdictional issue, which will be found in the record herein.

"The complaint alleges two causes of action, one for injunction, etc., on the equity side of the Court, and the other for damages on account of alleged injuries to lands of plaintiff, by reason of a tort committed thereon by the defendant. *Water Power Co.* v. *Electric Co.,* 43 S. C., 155, 20 S. E., 1002.

"By the will of Honorable Thomas G. Clemson, duly probated in the County of Oconee, on the 20th day of April, 1888, he devised and bequeathed the Fort Hill place, consisting of 814 acres (the land upon which the dike involved in the action was constructed), and other property, real and personal, to his executor, 'in trust that whenever the State of South Carolina may accept said property as a donation from me for the purpose of thereupon founding an agricultural college, in accordance with the views I have hereinbefore expressed * * * then my executor shall execute a deed of the said property to the said State, and turn over to the same all property hereinafter given as an endowment of said institution, to be held as such by the said State so long

as it in good faith devotes said property to the purpose of this donation.'

" 'Item 2. The following named gentlemen, seven in number, shall be seven of the board of trustees, to wit: R. W. Simpson, D. K. Norris, M. L. Donaldson, R. F. Bowen, B. R. Tillman, J. E. Wannamaker and J. E. Bradley; and the State, if it accepts the donation, shall never increase the board of trustees to a number greater than thirteen in all, nor shall the duties of said board be taken away or conferred upon any other men or body of men  The seven trustees appointed by me shall always have the right, and the power is hereby given them and their successors, which right the legislature shall never take away or abridge, to fill all vacancies which may occur in their number by death, resignation, refusal to act, or otherwise.  But the legislature may provide as it sees proper for the appointment or election of the other six trustees, if it accepts the donation * * * The name of this institution is to be "The Clemson Agricultural College of South Carolina." '

"In the preamble to his will, testator says: 'I have determined to devote the bulk of my property to the establishment of an agricultural college upon the Fort Hill place.  This institution I desire to be under the control and management of a board of trustees, a part of whom are hereinafter appointed, and to be modeled after the agricultural college of Mississippi as far as practicable,' * * * 'But I desire to state plainly that I wish the trustees of said institution to have full authority and power to regulate all matters pertaining to said institution, to fix the course of studies, to make rules and regulations for the government of the same, and to change them as in their judgment and experience may prove necessary.' * * *

"By an act of the General Assembly, approved November 27th, 1889, the State of South Carolina declares that it accepts the devise and bequest of Hon. Thomas G. Clemson, subject to the terms and conditions set forth in his said will, 'and that the treasurer of the State be, and he is hereby, authorized and empowered to receive and securely hold the

said property, both real and personal, and to execute all necessary papers and receipts thereafter, as soon as the said executor shall convey and transfer the said devise and bequest to the said State.' An agricultural and mechanical college was established in connection with the aforesaid devise, and bequest to be styled 'The Clemson Agricultural College of South Carolina,' 'to be situated at Fort Hill, in Oconee County, on the plantation so devised.' It is further provided that said college shall be under the management and control of a board of thirteen trustees, composed of the said seven members nominated by said will, and their successors, and six members to be elected by the legislature; they shall organize the college and put it in operation, prescribe the courses of study, elect professors, * * * and make all rules and regulations for the government of the college; employ such superintendents, head workmen, laborers for the farm, shops and grounds as may be necessary; charge tuition, etc.'

"Section 4 of said act provides, 'That the said board of trustees is hereby declared to be a body politic, and corporate, under the name and style of the Clemson Agricultural College of South Carolina. They shall have a corporate seal, which they may change at their discretion, and in their corporate name they may contract for, purchase and hold property for the purposes of this act, and may take any property and money given or conveyed by the deed, devise or bequest to said college, and hold the same for its use and benefit. * * * The board may sell any of the personal property "not subject to trust." They may sue and be sued, plead and be impleaded, in their corporate name, and may do all things necessary to carry out the provisions of this act, and may make by-laws for this purpose if they deem it necessary.'

"In section 6 of said act, this proviso appears: 'And provided further, that all personal property purchased with money appropriated by the State shall be taken and held as property of the State of South Carolina, and it shall be the duty of said board of trustees to make to the legislature an

annual report of the college, and of all farming operations and tests and experiments, and of all receipts and expenditures, with a statement of the condition of the property and funds of said college, and of all receipts and expenditures of money appropriated thereto by the State.'

"Pursuant to the power in discharge of the trust vested in him by the will of Mr. Clemson, on March 6th, 1890, the executor thereof conveyed, in fee simple, the Fort Hill place, and all the residue and remainder of the estate of testator (after paying legacies), unto the State of South Carolina, 'subject, however, to all and singularly the uses, trusts, limitations and conditions hereinafter expressed and contained;' that is to say, 'In trust for the purpose of founding upon the Fort Hill plantation herein and hereby conveyed and hereinafter more fully described, an agricultural college in accordance with the views, limitations and conditions set forth in the last will and testament and codicil of the said Thomas G. Clemson, hereinbefore referred to, and all holdings and balance of the said property as an endowment of said institution, under the terms and conditions in the said last will and testament and codicil.'

"By a joint resolution, approved January 4th, 1894, the legislature authorized the board of trustees to purchase the Lee lands of 228 acres, adjoining the Fort Hill place, for ten thousand dollars, and pay for same. On May 25th, 1894, a deed was made for this land by Floride Isabelle Lee. Another small tract of fourteen acres, purchased and paid for by the State, was deeded to the college by Mrs. Anna P. Lewis, the price thereof being $420, and the date of the deed is June 30th, 1893.

"On the 23d day of December, 1889, the legislature passed an act providing for the building and maintenance of Clemson College, and vested one-half of the Land Script and Hatch funds, and what is known as the Morrill fund, in the six trustees elected by the State, the income for the support of the college. The only other source of income of the college is the fertilizer tax. This tax is paid to the

State Treasurer, subject to the order of the trustees. The act of December 24th, 1890, so provides, and all monies appropriated to public institutions are paid by the State Treasurer. Section 724, Code of Laws of S. C., 1902.

"By a joint resolution, approved December 23d, 1890, entitled 'A joint resolution providing for the investment of all funds in the hands of the State Treasurer, under the Clemson bequest, and directing him to pay the interest arising thereon to the board of trustees of Clemson Agricultural College,' the State Treasurer is directed to invest and reinvest the funds now in his hands and as such may come into his hands, derived from the Clemson bequest, in such manner as he shall be directed by the Governor, the Comptroller General and the Treasurer of the State, or any two of them, and the State Treasurer is to collect the interest on said funds and pay them to the treasurer of the board of trustees.

"By a joint resolution, approved December 22d, 1891, the State Treasurer is authorized to collect all evidences of indebtedness now held by him, and which were turned over to him as a part of the Clemson bequest, and invest the same in Brown Consols bearing interest at the rate of six per cent. per annum.

"On December 24th, 1890, the General Assembly passed 'An Act to abolish the department of agriculture and the office of commissioner of agriculture, and to devolve all their powers and duties on the board of trustees of "The Clemson Agricultural College of South Carolina," except the control of phosphate interests of the State.'

"The act prescribing the duties of the board of trustees, and the last section thereof, enacts 'That all the privilege tax on fertilizers, now required to be paid to the commissioner of agriculture, shall in the future be paid to the Treasurer of the State, subject to the order of the board of trustees of the Clemson Agricultural College of South Carolina, * * * for its erection and maintenance.'

"The dike in question was built on the eight hundred and fourteen acre tract conveyed, as heretofore stated, by the executor of Mr. Clemson to the State. By a joint resolution, approved January 4, 1894, the board of directors of the South Carolina penitentiary were authorized to furnish convicts to the said board of trustees, and providing that fifty convicts be employed by said trustees in diking the Seneca River.

"A municipal corporation, known as Clemson College, was created by 'An act to incorporate Clemson College for the purpose of police regulation and the abatement of nuisance,' approved December 24th, 1894. 'The limits of said corporation * * * is a circle formed with the college building as a centre, with a radius of five miles, thus making the diameter of the circle ten miles, within which boundaries the jurisdiction of the corporation shall extend.'

"Section 2. 'That the board of trustees of Clemson College and their successors in office shall have perpetual control and direct the affairs of said corporation.' But section 5 enacts 'That nothing herein shall give said board of trustees the right to levy or collect any tax.'

"There are no stock subscriptions issued to any one; no returns are made, and no taxes paid on any property of the college. No money is expended by the board of trustees except as directed by the Legislature, to whom they make annual report.

"The State of South Carolina now owns the Fort Hill plantation in fee, holds the legal title in trust, and is using said place according to the trust.

"Under these facts, and the record herein, is this action a suit against the State, or has the State consented to the suit?

"It is now well settled that it is not necessary that the State should be a party upon the record to determine this question; but that a suit, though not in form, is in effect an action against the State, where the State has such an interest in the subject of the suit as to make it a necessary party, or

3—77

where the property of the State would have to respond to any judgment which might be obtained in the action.

"This action is brought against 'The Clemson Agricultural College of South Carolina, a corporation created by and existing under the laws of the State of South Carolina.' To ascertain the nature, powers and duties of this corporation we must examine the charter and the laws relating thereto.

"The State owns the property of the college, and pays the current expenses from the income of the donation of Mr. Clemson, now held and owned by the State, and appropriations from and by the legislature. Much law may be cited as to what constitutes a private and what a public corporation, but that is not the real question here. Is 'The Board of Trustees' of 'The Clemson Agricultural College of South Carolina' an agent of the State, and acting as agent of the State? I think that it is, for the State holds the fee in the 814 acres contained in the Fort Hill place, and has founded and is maintaining 'The Clemson Agricultural College of South Carolina' by and through 'The Board of Trustees,' as its agents, in accordance with the terms of the trust, created in the will of Mr. Clemson, and specifically accepted by the State.

"This action is not brought against the trustees as individuals, but against the corporation created under the name of 'The Clemson Agricultural College of South Carolina,' which is an agent of the State, and as such, at the expense of the State, constructed the dike in question, upon lands of the State.

"Has the State consented to a suit of this character being brought against it? In *Lowry* v. *Thompson*, 25 S. C., 416, it is held that a State cannot be sued without its consent, except in the limited class of cases in which a State may be sued in the original jurisdiction expressly granted to the Supreme Court by the Constitution of the United States. The consent of the State must be expressly and unequivocally given by the legislature of the State, for the State is a

sovereign, and anything not expressly given is withheld. No consent has been given by the State.

"The plaintiff alleges that the State has, in the charter of the defendant, expressly empowered the defendant 'to sue and be sued.' The 'sue and be sued' provision in the charter of the defendant relates to such powers as were conferred upon the trustees by the act, and the Legislature did not throw the State open to any and all kinds of suits. Under the charter the trustees could sue and be sued only so far and no further than was necessary to carry out the powers conferred upon the board, and upon such contracts and obligations as they might make in pursuance of such power. Such permission does not warrant a suit of this nature. This suit is for a tort, and in effect but not in form against the State, and is not warranted by any statute. *Lowry* v. *Thompson*, 25 S. C., 416; 26th A. & E. Ency. of Law, p 487-480; *Belknap* v. *Schild*, 161 U. S., 10.

"This being an action for tort, against the State, to recover eight thousand dollars, cannot be maintained.

"The suit is also for injunction and restoration of former conditions, which are equitable demands, to be determined on the equity side of the Court. 'The Court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others, or by saving these rights; but when a complete determination of the controversy cannot be had, without the presence of other parties the Court must cause them to be brought in.' Sec. 143, Code of laws, 1902. There can be no complete determination of the controversy at bar without the presence of the State, because a complete determination, should the plaintiff prevail, would result in an injunction against the use of the dike, and its removal, and a restoration of former conditions. The dike is the property of the State. It benefits and protects the State's lands from the overflow of the waters of Seneca River. It enables the State to better devote the land to the purpose of its donation. It is evident that the Court should not perpetually enjoin the use of the

State's property, by destroying the dike, an improvement on the State's lands, made by the agents of the State in carrying out the purpose and trust for which the land was donated to the State, without the presence of the State, as a party.

"The Court cannot order the State to be brought into this action, because it has no authority to make the State a party to any action in its own Court, without its consent. Therefore, for this reason, if no other, this suit must be dismissed. *Columbia W. P. Co.* v. *Columbia Electric Co.,* 43 S. C., 154, 20 S. E., 1002; *Belknap* v. *Schild,* 161 U. S., 10; *Lowry* v. *Thompson,* 25 S. C., 410.

"It is also evident that all the property held by the board of trustees, as the agent of the State, is the property of the State. Much of said property is in the custody of the State Treasurer, held by him as such, and he only pays the income therefrom, as well as the legislative appropriation, to the board of trustees for specific purposes. Therefore, the property of the State must respond to any judgment for damages which could be given in this action, because the board has no other property out of which the judgment might be satisfied. For every wrong there is a remedy, and it is most gratifying to know that the wrong alleged by plaintiff has its appropriate remedy. The State in its sovereignty has not consented to be a party to this suit, but the plaintiff can go before the Legislature, which represents the State, and petition the State to consider the wrongs alleged in the complaint herein, and his alleged rights; and in the language of Chief Justice McIver, 'where, if his claim be well founded, it is not permissible to doubt that he would receive ample justice.'

"Wherefore, it is ordered, adjudged and decreed, that the complaint herein be, and hereby is, dismissed, with costs, in favor of the defendant."

We are perfectly satisfied with the Circuit decree, and will only add a few observations thereon.

The plaintiff exhibited fifty-six grounds of appeal therefrom, and these grounds of appeal will be reported.

We will confine ourselves to the two questions, viz: (1) Is the action in effect a suit against the State of South Carolina? (2) Is the State an indispensable party to the complete determination of the controversy?

(1) We do not see how it can be successfully contended that this suit is not against the State. Before Thomas G. Clemson's death he owned the 814 acres of land known as the Fort Hill plantation. By his last will he directed his executor upon certain conditions, to convey said tract of land to the State of South Carolina in fee simple. The conditions named in said will and testament of Thomas G. Clemson have been fully complied with, and the deed of conveyance has actually been made, to wit: in 1890, to the State of South Carolina, and said tract of land is still in full possession of the same as the sole owner thereof. By an act of her Legislature, the board of trustees of the Clemson Agricultural College has been made the agent of said State in the maintaining and managing the same. In 1894, a dike, on the bank of Seneca River, on its eastern side, was built and constructed, under the authority of the State, by the Clemson Agricultural College. This dike solely on the lands owned by the State, is the cause of this controversy. The suit is brought against the Clemson Agricultural College, and, not, in name or fact, against the State of South Carolina. What kind of a corporation is this, public or private? It seems to us it is a public corporation. This matter independent of the history of the origin, conduct, and maintenance of the college in question, is set at rest by the case of the *State of Kansas ex rel. Little* v. *Board of Regents of University of Kansas et al.,* 29 L. R. A., 378, and the exhaustive note on this question. We may refer also to *Williamson* v. *Louisville Industrial School of Reform,* 95 Kentucky, 251; *Weddell* v. *Board of County School Commissioners,* 94 Md., 334.

But will the words of the charter, "to sue and be sued," give sanction to the idea that those words operate as a legis-

lative authorization of suit for a tort? This question has been before the Court before, and in every case we have held that these words only confer a right to sue such public corporations for the enforcement of a contract, and that it is necessary, to have direct and explicit authority to sue such corporations for a tort. *Bryant* v. *City Council of Orangeburg,* 70 S. C., 137; *White* v. *City Council of Charleston,* 2 Hill, 571, which held that it is settled in this State that an action to recover damages for tort, unless it is provided for by statute, cannot be maintained against a municipal corporation. *Columbia* v. *Chester,* 20 S. C., 286; *Gibbes* v. *Town Council of Beaufort,* 20 S. C., 218.

There is no special statute of this State authorizing a suit against the Clemson Agricultural College of South Carolina for tort. It follows therefore, that the action on the law side of the Court must be dismissed.

(2) The fee in this land is unquestionably in the State of South Carolina. The State has only by its legislative action, made the defendant its agent in managing this land and other property. To preserve the fee is unquestionably the duty of the State. How can its property be made liable to a sale to pay any judgment without a failure on its part to keep the legacy to it by Mr. Thomas G. Clemson intact? This is very well illustrated in the cases of *Lowry* v. *Thompson et al.,* 25 S. C., 416, and *Columbia Water Power Co.* v. *Columbia Electric Street Railway Co.,* 43 S. C., 155, 20 S. E., 1002.

Thus it is manifest that the State has such an interest in this suit, that its presence as a party is imperatively necessary. The State has not consented to be a party.

It is the judgment of this Court, that the judgment of the Circuit Court be, and the same is, affirmed.

January 27, 1907. PER CURIAM. After careful consideration of the petition herein for rehearing, the Court is satisfied that no material question of law or fact has either been overlooked or disregarded.

It is, therefore, ordered, that the petition be dismissed, and that the order heretofore granted, staying the remittitur, be revoked.